IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

BRITTANY M.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 3:24-cv-01570-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Brittany M. seeks judicial review of the Social Security Commissioner's final decision denying his application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381–1383f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

**PROCEDURAL HISTORY**

Plaintiff filed an application for supplemental security income on November 24, 2021, alleging a disability onset date of January 1, 2020. Tr. 211, 213, 63, 83. The Commissioner

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION AND ORDER

denied plaintiff's claim on March 9, 2022, and again upon reconsideration on October 26, 2022. Tr. 104, 126. Plaintiff filed a written request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on October 3, 2023. Tr. 154, 24. The ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 83–93. The Appeals Council denied plaintiff's request for review on July 17, 2024. Tr. 1–3. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and " 'may not affirm simply by isolating a specific quantum of supporting evidence.' " *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for the Commissioner's when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since his application filing date of November 24, 2021. Tr. 85. At step two, the ALJ found plaintiff had the following severe, medically determinable impairments: diabetes mellitus, hypertension, and peripheral neuropathy. *Id.* At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 87. The ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: frequent climbing of ladders, ropes, or scaffolds; frequent climbing of ramps or stairs; frequent crawling; and occasional concentrated exposure to extreme cold, extreme heat, vibration, unprotected heights and hazardous machinery.

Tr. 88.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 92. At step five, the ALJ found—considering plaintiff's age, education, work experience, and RFC—jobs exist in significant numbers in the national economy that plaintiff can perform, including housekeeping cleaner, routing clerk, and sales attendant. Tr. 92–93. Thus, the ALJ concluded plaintiff was not disabled at any time since November 24, 2021, the date plaintiff filed his application. Tr. 93.

3 – OPINION AND ORDER

DISCUSSION

Plaintiff claims the ALJ erred in discounting his subjective symptom testimony and evaluating the medical opinions of Vanessa Mizak, FNP-C, and Elizabeth Adkisson, QMHP.

I.      **Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the

intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

In his pain questionnaire, plaintiff described constant burning and sharp needle-like pain on the tops and bottoms of both feet. Tr. 255. The pain ranged from "5-15 pain level where 15 is torture level pain." *Id.* Plaintiff explained "[a]ny activity that requires standing or walking or even using the clutch in a truck to shift" causes or increases the pain. *Id.* The pain also sometimes occurred spontaneously with no known triggers. Tr. 256. Plaintiff claimed that only pain pills and lying in bed eased the pain. *Id.* In his function report, plaintiff explained his pain negatively affects his ability to sleep, dress, bathe, shave, cook, and brush his teeth. Tr. 262. Plaintiff generally tries to stay off his feet, but takes short trips to stores when needed, does small house chores, watches television, and goes to doctors' appointments. *Id.* Plaintiff took care of a friend by shopping and going on pharmacy runs and taking the friend to doctors' appointments. *Id.* Plaintiff testified he is able to walk "may[be] 100 to 200 yards" before needing to stop and rest, and he can usually resume walking after resting for two or more hours. Tr. 266. Plaintiff used cold baths and wet towels with a fan "to cool feet at night from burning sensation [and] foot pain." Tr. 256, 267.

At his hearing on October 3, 2023, plaintiff testified he was unable to work full-time because of his neuropathy. Tr. 41. Plaintiff testified he worked part time at Papa Murphy's, a "Take 'N' Bake" pizza place, where he wrapped pizzas in plastic wrap. Tr. 38. At the time of the hearing, plaintiff usually worked four-hour shifts for a total of 12 to 26 hours a week. Tr. 39, 43. Plaintiff stood while he worked, took breaks to sit, and took tramadol or hydrocodone for breakthrough pain. Tr. 43. Plaintiff testified he sometimes "can't even last five minutes into [his]

5 – OPINION AND ORDER

shift without being in pain." *Id.* The tramadol and hydrocodone helped with the pain but could take up to an hour to become effective, negatively affecting his concentration, and plaintiff began to develop a tolerance to the narcotics. Tr. 44, 54. Plaintiff described his body gets "used to the narcotics [so] that it doesn't work anymore" and therefore he would "try and not take it for a few days or at least a day or so just to have it work again." Tr. 54. When the ALJ asked plaintiff if he would be able to work his current job for eight hours a day, plaintiff answered he could not because he would have to be sitting or taking "so many narcotics just to try to keep the pain away." Tr. 53.

With respect to activities of daily living, plaintiff testified he had no issue sitting but could not walk a full block. Tr. 44. Plaintiff testified he did his own laundry, grocery shopping, and cooking. Tr. 46. He lives with his mother, who gets seizures, and helps her by holding her hand and making sure she knows he is there for her if she is having an episode. Tr. 34. Before living with his mother, plaintiff lived with a friend. Tr. 39. Plaintiff's friend became bedridden in 2021, and plaintiff became her caretaker from approximately 2021 to 2022. *Id.* Plaintiff ensured his friend ate, helped her go to the bathroom, cooked for her, shopped for her, cared for the dog, and generally cared for the house. Tr. 40. Plaintiff helped in this way until his friend passed away. *Id.*

Plaintiff testified he is a slow reader and sometimes needs to ask for help when there is a word he cannot read. Tr. 49. He testified he has problems with reading at work and will sometimes not know a word such as a kind of pizza or pizza topping. *Id.* Plaintiff believed he would be able to work for eight hours a day if the job was mostly sitting. Tr. 54.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 89.

However, the ALJ concluded plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id*.

### A. Objective Medical Evidence

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7–8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

Here, the ALJ cited medical records from January 20 and May 28, 2020, September 7, 2021, February 9, May 10, June 8, November 9, and December 20, 2022, and February 3, March 22, and June 30, 2023, to illustrate inconsistencies between plaintiff's medical record and his subjective symptom testimony. Tr. 89–91, 463, 467–68, 538, 620, 635, 639, 645–46, 387–88, 391, 402–03, 414, 417, 426, 429, 432, 442, 445. However, these inconsistencies are either mischaracterized or unrelated to plaintiff's testimony regarding his neuropathy. *Id.* Therefore, this was not a clear and convincing reason to reject plaintiff's symptom testimony.

7 – OPINION AND ORDER

The ALJ first referred to a nerve conduction study from May 28, 2020, that showed normal results. Tr. 89, 463. While the results of the nerve conduction study were normal, the medical provider referred plaintiff to a neuromuscular specialist due to plaintiff's severe pain and unusual symptoms, and noted "[s]mall fiber peripheral neuropathy is a consideration." Tr. 463. Next, the ALJ referenced a January 20, 2020 electromyogram with normal results; however, the medical provider elaborated "[t]his study does not rule out small fiber neuropathy is causing feet pain." Tr. 89, 467. Finally, the ALJ referenced an appointment plaintiff had with a neurological specialist on September 7, 2021, where "the claimant and [his] spouse reported the claimant's symptoms had been stable over the past year and [his] physical examination was unchanged." Tr. 89, 538. This was a mischaracterization of the medical provider's findings because here, "stable" meant plaintiff "continues to have significant painful paresthesias, which are often triggered by walking on [his] feet . . . [he] is unable to walk approximately half a city block before [he] will have to sit down and rest." Tr. 538. Because these medical records are not inconsistent with plaintiff's subjective symptom testimony, this was not a clear and convincing reason supported by substantial evidence to discount plaintiff's symptom testimony.

The ALJ also repeatedly referenced "unremarkable" or "normal" examinations of plaintiff spanning from February 9, 2022, to June 30, 2023. Tr. 90, 620, 639, 645–46, 387–88, 91, 402–03, 414, 417, 426, 429, 432. The examinations the ALJ referred to, however, were not examinations of pain or plaintiff's neuropathy, but general physical examinations assessing plaintiff's appearance, pupil dilation, heart rate and rhythm, lung function, abdominal and gut health, mental status, mood, and behavior. Tr. 620, 639, 646, 387–88, 402–03, 414, 429. Because the "unremarkable" and "normal" examinations cited by the ALJ are unrelated to the subjective symptom testimony at issue—i.e., plaintiff's neuropathy and pain—they do not demonstrate

8 – OPINION AND ORDER

inconsistency between the medical record and plaintiff's symptom testimony. In fact, at several of the medical visits the ALJ cited as "unremarkable" or "normal," plaintiff's medical provider recorded observations consistent with plaintiff's symptom testimony, such as: "[p]ain in feet burning," "patient reports that they have breakthrough foot pain that can shoot up to her knees that tramadol was not alleviating," "[p]ositive for myalgias and athralgias. Burning foot and leg pain," "[d]ecreased sensation bilateral legs," "[p]atient reports that their feet have been getting much worse recently. They have been trying ice packs and every method they know to alleviate pain, but it has made it difficult to work. They have been exhausted between their pain and work schedule. They feel like they are at their breaking point." Tr. 620, 635, 645, 388, 442.

In sum, it was unreasonable for the ALJ to discount plaintiff's symptom testimony based on the inconsistencies the ALJ relied upon.

### B. Activities of Daily Living

The ALJ also discredited plaintiff's symptom testimony because his "reported activities of daily living during the relevant period . . . are not consistent with the extreme limitation [he] has alleged." Tr. 91. Specifically, the ALJ cited to plaintiff's employment at Papa Murphy's where he works standing for hours at a time and his ability to perform other activities of daily living, such as driving, cooking, and shopping for up to two hours at a time. Tr. 91.

For daily activities to discredit subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). A plaintiff, however, need not be utterly incapacitated to receive disability benefits. *See id.* at 1112-13 (noting a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does

not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick*, 157 F.3d at 722 (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations").

Here, plaintiff's activities of daily living were consistent with his symptom testimony. Medical records state "[patient] reports pain worsens with any activity, extremely affecting [patient's] daily activities," "after [two] hours of working their feet begin to feel a lot of pain and they take tramadol as needed at work," and "[t]hey have been having a hard time recovering after a work day and have to lie down and rest for most of the day." Tr. 604, 384. Furthermore, in his function report, plaintiff asserted he can no longer partake in more rigorous activities such as cooking for longer periods of time, dancing, balancing, vacuuming, and exercising due to his pain. Tr. 262. Accordingly, the ALJ did not properly discount plaintiff's symptom testimony based on his activities of daily living.

### C.  Treating Physician Indicating Disability

Lastly, the ALJ discounted plaintiff's symptom testimony because "the record contains no opinions during the relevant period from any treating physician indicating that the claimant is disabled due to [his] physical impairments." Tr. 91. A treating physician's determination of disability is a "[s]tatement on issues reserved to the Commissioner" and therefore "inherently

neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3), (c)(3)(i). Thus, this does not constitute a clear and convincing reason to discount plaintiff's symptom testimony.

In sum, the ALJ failed to provide clear and convincing reasons to discount plaintiff's testimony.

## II.   Medical Opinion Evidence

Plaintiff argues the ALJ did not properly evaluate the medical opinions of Vanessa Mizak, FNP-C, and Elizabeth Adkisson, QMHP. Pl. Br. 2, 9–13, ECF 9.

### A.   Standard Regarding Evaluation of Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, the ALJ must apply 20 C.F.R. § 404.1520c for Title II claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b). Accordingly, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867–68; *see also* 20 C.F.R. §§ 404.1520c(a). Instead, the ALJ evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20

C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id*. (citing 20 C.F.R § 404.1520c(c)(2)).

ALJs must articulate how persuasive the medical opinions are and explain how the supportability and consistency factors are considered. 20 C.F.R. §§ 404.1520c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)). Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

B.    **Vanessa Mizak, FNP-C**

Vanessa Mizak, FNP-C, met with plaintiff on September 24, 2022, for a consultative examination. Tr. 657–69. Following an overview of plaintiff's history and a physical

examination, Mizak assessed plaintiff to have the following limitations regarding sitting and standing in an eight-hour day: sitting two to three hours, standing for two hours, and walking for one to two hours. Tr. 666. Mizak based these findings on her exam and plaintiff's symptoms related to his small fiber neuropathy. *Id.*

The ALJ found Mizak's opinion to be "minimally persuasive." Tr. 90. The ALJ found Mizak's opinion was not well supported by her physical examination of plaintiff and inconsistent with plaintiff's treatment history. *Id.* The ALJ noted Mizak's physical examination of plaintiff was "unremarkable" and Mizak's limitations "rely heavily on the subjective reporting provided by the claimant." However, Mizak's physical examination was not unremarkable, but revealed "feet that are cool to touch and mildly erythematous." Tr. 666. Moreover, as explained above, the ALJ improperly discounted plaintiff's symptom testimony.

The ALJ found Mizak's opinion "partially consistent with the medical evidence" but her recommended limitations were inconsistent with plaintiff's treatment history, noting "claimant's pain was generally controlled with pain medication." Tr. 90. However, the medical record showed plaintiff was unable to sleep due to his foot pain despite taking multiple pain medications throughout the day and night, his non-narcotic medications were sometimes insufficient to manage his pain, he would need to take three or four pills of Tramadol to alleviate his symptoms, and later, Tramadol was no longer effective at alleviating his pain. Tr. 570, 616, 635.[2] Furthermore, plaintiff's reliance on pain medications to treat his pain was listed as a medical problem by Dr. Andrew Rice, MD, Ph.D. at an appointment on May 28, 2020. Tr. 460. This concern was echoed by Dr. Verena Samara, MD, on May 24, 2021, who discussed with

---

[2] "Patient reports that they have breakthrough foot pain that can shoot up to [his] knees that tramadol was not alleviating. They typically take 1-3 tablets as needed for pain, but once or twice a week they have this breakthrough pain." Tr. 635.

13 – OPINION AND ORDER

plaintiff his need to limit his use of Tramadol due to his chronic use and the risks of chronic use. Tr. 571. Because the record reflects plaintiff was unable to effectively control the symptoms of his neuropathy with pain medication, the ALJ's assertion that "claimant's pain was generally controlled with pain medication" was not supported by substantial evidence. Tr. 90.

Thus, the ALJ finding that Mizak's opinion was minimally persuasive is not supported by substantial evidence.

### B. Elizabeth Adkisson, QMHP

In May 2023, plaintiff's counselor Elizabeth Adkisson, QMHP, completed questionnaires assessing and explaining plaintiff's mental limitations. Tr. 672–79. Adkisson saw plaintiff bi-weekly and as needed, and plaintiff has been a patient at her clinic, Benton County Health Services, since September 16, 2013. Tr. 672. Adkisson stated plaintiff cannot read and has mild difficulty understanding, remembering, and carrying out simple and complex instructions and has mild difficulty making judgments on simple and complex work-related decisions. Tr. 676. Adkisson indicated plaintiff would be absent three or four days a month due to gender dysphoria, anxiety, and depression. Tr. 678-79. Finally, Adkisson opined plaintiff could work if he had a job accommodating of his "mental health, neurocognitive defects and physical health limitations—they are on pain medications." Tr. 678 (emphasis in original).

The ALJ found Adkisson's opinion to be minimally persuasive. The ALJ found Adkisson's opinion that plaintiff would be absent three or four days a month to be inconsistent with plaintiff's longitudinal treatment record, lack of ongoing psychiatric care during the relevant period, and normal mental status examinations. Tr. 87.

Regarding inconsistency, the ALJ noted treatment with Adkisson was not reported prior to March 2023, and the record contains only one report of plaintiff being unable to read from an
14 – OPINION AND ORDER

appointment with Adkisson on May 24, 2023. Tr. 87, 362. However, the record of Adkisson's treatment of plaintiff beginning in March 2023 was not inconsistent because Adkisson stated plaintiff had been with the clinic since 2013, not that Adkisson had treated plaintiff since 2013. Tr. 87, 672. Second, the May 24, 2023, treatment note was not the only mention of plaintiff's difficulty with reading in the record. Tr. 87, 362. Plaintiff's disability report form states he received an Individualized Education Plan ("IEP") from September 2013 to his graduation of high school in June 2017 due to his "reading, learning disability." Tr. 241. Plaintiff's difficulty with reading is also reflected in the record in paperwork from the Oregon Vocational Rehabilitation program from 2019, and a report by Dr. Julie Redner, Ph.D., on March 14, 2017, diagnosing plaintiff with "specific learning disabilities, with impairments in reading/written expression/mathematics."[3] Tr. 686, 742.

Because the ALJ's rationale is not supported by substantial evidence and the ALJ did not provide other valid reasons for finding Akdisson's opinion minimally persuasive, the ALJ erred.

**III.    Remedy**

When the court determines the Commissioner erred in deciding to deny benefits, the court has discretion to remand the matter for further proceedings or the immediate award of benefits. *See Benecke*, 379 F.3d at 590 ("The decision to remand to the SSA for further proceedings instead of for an immediate award of benefits is reviewed for abuse of discretion."). The court may remand for the immediate award of benefits if certain prerequisites are met.

---

[3] Plaintiff also did not have consistently normal mental status examinations; medical providers assessed plaintiff as: "[a]gitated and concerned," "[a]ffect is labile, [r]eported mood is sad, depressed and anxious . . . has depressive cognitions and has suicidal ideations . . . [i]nsight is limited," "[e]ye [c]ontact is fleeting," and "[s]peech: monotonous., [m]ood: [d]epressed." Tr. 568, 348, 359, 364.

*Dominguez v. Colvin*, 808 F.3d 403, 407–08 (9th Cir. 2015), as amended (Feb. 5, 2016). The court "must . . . review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id*. (simplified) (citation omitted). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke*, 379 F.3d at 593.

If the court determines the record "has been fully developed . . . and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (simplified) (quoting *Garrison*, 759 F.3d at 1020). Even if these requisites are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. The court will "generally remand for an award of benefits only in rare circumstances." *Treichler*, 775 F.3d at 1100 (simplified).

This is not one of those rare circumstances where remand for award of benefits is appropriate. Instead, the court remands the case for the ALJ to reassess plaintiff's subjective symptom testimony, Mizak's opinion, Adkisson's opinion, and to conduct additional further proceedings as necessary for rendering a decision regarding whether plaintiff is disabled.

## CONCLUSION

For the reasons given above, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED July 21, 2025.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

16 – OPINION AND ORDER